UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____x
NIKKIA T. MCCLAIN,

                     Plaintiff,                   No. 20-CV-5054

     -against-

                                          COMPLAINT

                                          Jury Demanded

AUTOEXPO ENT. INC. f/k/a
AUTO EXPO ENT. INC.,
RESPECT AUTO GROUP I LLC d/b/a
YONKERS KIA,
OMID ELYAHOU,
MAX COLIMON,
CHRISTINA CASTELUCHE,
SANTANDER CONSUMER USA INC.
CAPITAL ONE, NATIONAL ASSOCIATION
d/b/a CAPITAL ONE AUTO FINANCE,
EXETER FINANCE LLC,
700 CREDIT, LLC,
TRANS UNION, LLC,
EQUIFAX INFORMATION SERVICES LLC,
EXPERIAN INFORMATION SOLUTIONS, INC.,

                     Defendants.
_____x


## Introduction

1.    This is a suit brought by a consumer, Nikkia T. McClain, against

automobile dealerships, AutoExpo Ent. Inc. f/k/a Auto Expo Ent. Inc. and Respect

Auto Group I LLC d/b/a Yonkers Kia, that sold her a motor vehicle with a loan

agreement only to later prepare an altered and forged sales-and-loan agreement,

which they assigned to Santander Consumer USA Inc. The forged-and-altered sales-

1

and-loan documents increased the purchase price from the advertised-and-agreed price of $26,595 to $36,271.39. Despite the fact that a deal was consummated and completed in January 2020, Defendants continued to access Plaintiff's credit profile without authority and without any permissible purpose on numerous occasions into April 2020. Then in May 2020, AutoExpo unlawfully seized Plaintiff's vehicle and has attempted to sell it to third-parties, without authority and in a non-commercially reasonable manner. Plaintiff asserts claims under the Truth-in-Lending Act ("TILA"), the Fair Credit Reporting Act ("FCRA"), and the Equal Credit Opportunity Act ("ECOA"), and further asserts state-law claims for declaratory relief and for common-law fraud, conversion, violations of the Uniform Commercial Code, and violations of New York General Business Law § 349.

## Parties

2.      Plaintiff is a resident of East Orange, New Jersey.

3.      Defendant Respect Auto Group I LLC d/b/a Yonkers Kia ("Yonkers Kia") is a New York corporation with its principal place of business, a dealership, at 1850 Central Park Ave, Yonkers, New York 10710.

4.      Defendant AutoExpo Ent. Inc. f/k/a Auto Expo Ent. Inc. ("AutoExpo") is a New York corporation with its principal place of business, a dealership, at 46 Northern Boulevard, Great Neck, New York 11021, and is a "user" as governed by the FCRA.

5. In taking the actions described below, AutoExpo acted as agent for, on behalf of, and in complicity with Yonkers Kia.

6. Defendant Santander Consumer USA, Inc. ("Santander") is an Illinois corporation, with its principal place of business at 1601 Elm Street, Suite 800, Dallas, Texas 75201, and is a "user" as governed by the FCRA.

7. Defendant Capital One, National Association d/b/a Capital One Auto Finance ("Capital One") is a National Bank, with its principal place of business at 1680 Capital One Drive, McLean, Virginia 22102-3491, and is a "user" as governed by the FCRA.

8. Defendant Exeter Finance LLC ("Exeter") is a Delaware Limited Liability Company, with its principal place of business at 2101 W. John Carpenter Freeway, Irving, Texas 75063, and is a "user" as governed by the FCRA.

9. Defendant 700 Credit, LLC ("700Credit") is a Delaware limited liability company, with its principal place of business at 31440 Northwestern Highway, Suite 250, Farmington Hills, MI 48334, and is a "user" as governed by the FCRA.

10. Defendant Omid Elyahou ("Elyahou") is the owner and chief executive officer of Defendant AutoExpo and has a principal place of employment at 46 Northern Boulevard, Great Neck, New York.

11. Defendant Elyahou's actions described herein were undertaken both in his capacity as agent for Defendant AutoExpo and in his individual capacity.

3

12.     Defendant Max Colimon ("Collimon") is an employee of Defendant AutoExpo and has a principal place of employment at 46 Northern Boulevard, Great Neck, New York.

13.     Defendant Colimon's actions described herein were undertaken both in his capacity as agent for Defendant AutoExpo and in his individual capacity.

14.     Defendant Christina Casteluche ("Casteluche") is an employee of Defendant AutoExpo and has a principal place of employment at 46 Northern Boulevard, Great Neck, New York.

15.     Defendant Casteluche's actions described herein were undertaken both in her capacity as agent for Defendant AutoExpo and in her individual capacity.

16.     Defendant Elyahou created, implemented and ratified all actions of Defendants AutoExpo, Colimon, and Casteluche described below.

17.     Upon information and belief, Equifax Information Services LLC. ("Equifax") is a Georgia limited liability company, with its principal place of business at 1550 Peachtree Street NE, Atlanta, GA 30309, that is authorized to do business in New York.

18.     Upon information and belief, Equifax is a "consumer reporting agency" as defined in 15 U.S.C. §1781a(f).  Upon information and belief, Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerned consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d) to third parties.

4

19.     Upon information and belief, Equifax disburses such consumer reports to third parties under contract for monetary compensation.

20.     Upon information and belief, Experian Information Solutions, Inc. ("Experian") is an Ohio corporation, with its principal place of business at 475 Anton Boulevard, Costa Mesa, CA 92626, that is authorized to do business in New York.

21.     Upon information and belief, Experian is a "consumer reporting agency" as defined in 15 U.S.C. §1781a(f).  Upon information and belief, Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerned consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d) to third parties.

22.     Upon information and belief, Experian disburses such consumer reports to third parties under contract for monetary compensation.

23.     Upon information and belief, Trans Union, LLC. ("Trans Union") is a Delaware limited liability company, with its principal place of business at 555 West Adams Street, Chicago, Illinois 60661, that is authorized to do business in New York.

24.     Upon information and belief, Trans Union is a "consumer reporting agency" as defined in 15 U.S.C. §1781a(f).  Upon information and belief, **Trans Union** is regularly engaged in the business of assembling, evaluating, and disbursing information concerned consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d) to third parties.

5

25.     Upon information and belief, Trans Union disburses such consumer reports to third parties under contract for monetary compensation.

## Jurisdiction and Venue

26.     This court has federal question jurisdiction under 28 U.S.C. § 1331, 15 U.S.C. § 1640, 15 U.S.C. § 1681n, 15 U.S.C. § 1681o, and 15 U.S.C. § 1691e.

27.     This Court has supplemental jurisdiction under 28 U.S.C § 1367(a).

28.     This court has jurisdiction over the Defendants AutoExpo and Yonkers Kia, because they are residents of New York.

29.     This court has jurisdiction over the Defendants Elyahou, Colimon, and Castelcuhe, because they do and transaction business in New York.

30.     This court has jurisdiction over the Defendant Capital One, because it does and transacts business in New York.

31.     This court has jurisdiction over the Defendant Santander, because it does and transacts business in the State of New York and is authorized to do business in New York.

32.     This court has jurisdiction over the Defendant Exeter, Trans Union, Equifax, and Experian because they do and transact business in the State of New York and are authorized to do business in New York.

33.     This court has jurisdiction over the Defendant 700Credit because it does and transacts business in the State of New York.

34.     Venue is proper in this district under 28 U.S.C. § 1391(b), as the acts and transactions that gave rise to this action occurred, in substantial part, in this district.

35.     Venue is also proper in this district because the defendants transact business in this district and the interests of justice require maintenance of this action in this district.

## Facts

36.     On or about January 31, 2020, Plaintiff went to AutoExpo's dealership located at 46 Northern Boulevard, Great Neck, New York to buy a new car.

37.     Defendant met with Max Colliman, a sales agent for AutoExpo.

38.     Prior to allowing Plaintiff to look at any cars, Colliman said that Plaintiff had to be approved for financing.

39.     AutoExpo obtained a complete and accurate credit history from Plaintiff.

40.     Colliman then had Plaintiff join a phone call with Santander, who Colliman said was financing the transaction. Plaintiff needed to verify credit information for Santander.

41.     Approximately an hour later, Colliman told Plaintiff she was approved for a loan.

42.     Colliman then showed Plaintiff several vehicles, including a 2017 Mercedes Benz E Class, VIN WDDZF4KB8HA062365, ("the vehicle" or "the car"), which was listed for sale for $26,595.00.

43.     AutoExpo was at that time advertising the vehicle online for sale for $26,595.00. A copy of the advertisement is attached as <u>Exhibit 1</u>.

44.     Plaintiff agreed to purchase, and AutoExpo agreed to sell, the vehicle for $26,595.00, with a $2,000 down payment.

45.     Colliman then had another employee of AutoExpo—Christina Casteluche—handle the closing for the transaction.

46.     After being fully informed of Plaintiff's credit history and knowing its own standards for credit, AutoExpo wrote a Retail Installment Sales Contract and related documents in connection with the sale of the vehicle to Plaintiff.

47.     Casteluche took Plaintiff to the finance office and handed Plaintiff transaction paperwork.

48.     The paperwork Casteluche gave to Plaintiff did not have any deal terms filled in.

49.     Casteluche told Plaintiff to sign the paperwork at indicated locations which Casteluche pointed to.

50.     Plaintiff asked Casteluche what her payments would be, and Casteluche told her they would be approximately $625.00.

8

51.     Casteluche then asked Plaintiff for the deposit, and sent Plaintiff with Colliman for her to pay the deposit.

52.     Plaintiff believed that Casteluche was finishing filling out the paperwork for her to review and finalize at this time.

53.     When Plaintiff returned to Casteluche's office after making the deposit, Casteluche was with another customer and handed Plaintiff an envelope, said she was all set, and Colliman gave her the keys.

54.     Plaintiff did not look at the envelope at the time, believing it to contain all of the transaction documents, on the terms agreed upon.

55.     In fact, the envelope did not contain the transaction documents. All it contained was a temporary plate document and a window sticker showing the features of the vehicle, and listing AutoExpo as the seller.

56.     AutoExpo provided a Limited Warranty Registration form which listed AutoExpo as the dealer. A copy of this document is attached as Exhibit 2.

57.     In the Warranty documents, AutoExpo lists the sales price of the vehicle as $27,795.

58.     In the Warranty documents, AutoExpo lists the mileage of the vehicle as 30,906.

59.     AutoExpo did not give Plaintiff a copy of the purchase paperwork at the time of the transaction.

60.     Casteluche and Colliman from AutoExpo told Plaintiff that she was financed through Santander.

9

61.     AutoExpo registered the vehicle in Plaintiff's name, listing Santander as the lien holder, with the New Jersey Motor Vehicle Commission. A copy of the Application for Certification of Ownership is attached hereto as <u>Exhibit 3</u>.

62.     The Application for Certificate of Ownership lists the mileage on the vehicle as 45,990.

63.     After the sale, Plaintiff opened the envelope Casteluche had given to her, and discovered that it did not contain the deal documents or loan paperwork

64.     Plaintiff then contacted Santander to inquire about her loan status and payment due dates.

65.     Santander advised Plaintiff that they did not have a credit line for her.

66.     Plaintiff then contacted AutoExpo to ask them for a copy of the transaction paperwork, including the Retail Installment Sales Contract, so that she would know when and where to make payments.

67.     AutoExpo filled in the blanks in the sales paperwork and subsequently emailed a copy of the completed paperwork to Plaintiff. A copy of the Retail Installment Sales Contract ("RISC") which AutoExpo sent to Plaintiff after the sale is attached hereto as <u>Exhibit 4</u>.

68.     Previous to and in connection with the sales transaction, AutoExpo obtained an extension of credit for Plaintiff, provided Plaintiff advice or assistance in connection with an extension of credit, *to wit*, the Retail Installment Sales Contract previously referenced as <u>Exhibit 4</u> and incorporated herein by reference

10

69.     Unknown to Plaintiff, when AutoExpo filled in the blanks in the sales paperwork, they did not list the sales price as $26,595 as advertised and agreed. Instead, they listed the sales price as $38,574.,99 (including $2,303.60 sales tax), leaving a vehicle sale price of $36,271.39.

70.     This represented an upcharge of $9,676.39 over the advertised-and-agreed sales price.

71.     In addition, the paperwork that AutoExpo completed showed a $3,000 cash down payment and further shows that Plaintiff traded in a 2005 Honda Civic with a value of $1,500.

72.     Plaintiff did not trade in or own a 2005 Honda Civic.

73.     Plaintiff only made a $2,000 down payment, via credit card.

74.     In addition, in reviewing the sales paperwork belatedly provided to Plaintiff, Plaintiff discovered that AutoExpo did not appear as the seller on the RISC or other sales documents. Plaintiff also discovered that the odometer disclosure statement given to her by AutoExpo listed Yonkers Kia as the Seller, and listed the odometer on the vehicle as 45,990.

75.     Unknown to Plaintiff, AutoExpo listed Yonkers Kia as the seller in the sales documents.

76.     On information and belief, Yonkers Kia did not have an interest in the vehicle.

77.    On information and belief, AutoExpo listed Yonkers Kia as the seller in order to utilize financing companies available to Yonkers Kia that were not available to AutoExpo.

78.    Yonkers Kia authorized AutoExpo to use their name as the seller in the transaction.

79.    At the time of the sale, Yonkers Kia had a course of dealing and practice of authorizing AutoExpo and other dealerships to sell vehicles in Yonkers Kia's name.

80.    At the time of the sale, there were no notices, divisions, markers or other boundaries or consumer advisements to alert consumers that there was any car dealer at 46 Northern Boulevard, Great Neck, New York other than AutoExpo.

81.    On information and belief, Yonkers Kia did not keep any inventory at 46 Northern Boulevard, Great Neck, New York.

82.    On information and belief, Yonkers Kia did not have a lease at 46 Northern Boulevard, Great Neck, New York.

83.    On information and belief, Yonkers Kia had a pattern and practice of allowing other dealers, including AutoExpo , to use Yonkers Kia's name in sale.

84.    On information and belief, when AutoExpo used Yonkers Kia's name in sales to customers, they did not disclose to the consumers that the vehicle was coming from a different car dealer and different legal entity.

85. On information and belief, when AutoExpo used Yonkers Kia's names in sale to consumers, they did not transfer the title between AutoExpo and Yonkers Kia. In other words, AutoExpo would keep an open title and not appear in the title history of the vehicle, instead only listing Yonkers Kia on the title history.

86. At the time of the sale transaction on January 31, 2020 referenced above, Yonkers Kia did not have the title to the vehicle assigned to it.

87. Subsequent to selling the vehicle to Plaintiff, Defendants AutoExpo and Yonkers Kia sold and assigned their interest in the RISC to Santander

88. Upon receipt of the RISC, Plaintiff contacted Eric Outcalt and Casteluche from AutoExpo asking for an explanation of the discrepancy.

89. Eric from AutoExpo then told Plaintiff he would work on correcting the paperwork.

90. Instead of correcting the paperwork, AutoExpo, by and through Casteluche, sent Plaintiff an email indicating that they were going to unwind the transaction and cancel it, and that they were going to pick up the vehicle.

91. Plaintiff told Casteluche that she did not agree to the cancellation, or to AutoExpo picking up the vehicle.

92. The transaction was final on January 31, 2020 when Plaintiff agreed to the terms of the sale, signed what she believed was the paperwork reflecting those terms, received possession of the vehicle, and when AutoExpo processed the registration of the vehicle into Plaintiff's name with Santander as the lienholder.

13

93.     Despite the sale having been financed and finalized on January 31, 2020, , on or about March 11, 2020, AutoExpo accessed Plaintiff's consumer credit reports from Trans Union, Experian and Equifax.

94.     In March 2020, AutoExpo lacked any permissible purpose for accessing Plaintiff's consumer credit reports.

95.     In March 2020, AutoExpo did not have authority to access Plaintiff's consumer credit reports.

96.     AutoExpo did not provide Plaintiff with any notice of adverse action related to the March 2020 credit-inquiries or the January 2020 credit-inquiries.

97.     AutoExpo did not make any offer of credit as a result of the March 2020 credit inquiries.

98.     Also on or about March 11, 2020, 700Credit accessed Plaintiff's consumer credit report from Experian.

99.     In March 2020, 700Credit lacked any permissible purpose for accessing Plaintiff's consumer credit report.

100.    In March 2020, 700Credit did not have authority to access Plaintiff's consumer credit report.

101.    700Credit did not provide Plaintiff with any notice of adverse action related to the March 2020 credit-inquiry.

102.    700Credit did not make any offer of credit as a result of the March 2020 credit inquiry.

103.    On information and belief, on or about March 20, 2020, AutoExpo requested Capital One to access Plaintiff's consumer credit reports.

104.    On or about March 20, 2020, Capital One accessed Plaintiff's consumer credit reports from Trans Union and Experian.

105.    In March 2020, Capital One lacked any permissible purpose for accessing Plaintiff's consumer credit reports.

106.    In March 2020, Capital One did not have authority to access Plaintiff's consumer credit reports.

107.    Capital One did not provide Plaintiff with any notice of adverse action related to the March 2020 credit-inquiries.

108.    Capital One did not make any offer of credit as a result of the March 2020 credit-inquiries.

109.    On information and belief, on or about March 30, 2020, AutoExpo requested Exeter to access Plaintiff's consumer credit reports.

110.    On or about March 30, 2020, Exeter accessed Plaintiff's consumer credit reports from Trans Union and Experian.

111.    In March 2020, Exeter lacked any permissible purpose for accessing Plaintiff's consumer credit reports.

112.    In March 2020, Exeter did not have authority to access Plaintiff's consumer credit reports.

113.    Exeter did not provide Plaintiff with any notice of adverse action related to the March 2020 credit-inquiries.

15

114.    Exeter did not make any offer of credit as a result of the March 2020 credit-inquiries.

115.    On information and belief, on or about March 30, 2020, AutoExpo requested Santander to access Plaintiff's consumer credit reports.

116.    On or about March 30, 2020, Santander accessed Plaintiff's consumer credit report from Experian.

117.    In March 2020, Santander lacked any permissible purpose for accessing Plaintiff's consumer credit report.

118.    In March 2020, Santander did not have authority to access Plaintiff's consumer credit report.

119.    Santander did not provide Plaintiff with any notice of adverse action related to the March 2020 credit-inquiries.

120.    Santander did not make any offer of credit as a result of the March 2020 credit-inquiries.

121.    On information and belief, on or about April 7, 2020, AutoExpo requested Capital One to access Plaintiff's consumer credit reports.

122.    On or about April 7, 2020, Capital One accessed Plaintiff's consumer credit reports from Trans Union and Experian.

123.    In April 2020, Capital One lacked any permissible purpose for accessing Plaintiff's consumer credit reports.

124.   In April 2020, Capital One did not have authority to access Plaintiff's consumer credit reports.

125.   Capital One did not provide Plaintiff with any notice of adverse action related to the April 2020 credit-inquiries.

126.   Capital One did not make any offer of credit as a result of the April 2020 credit-inquiries.

127.   On or about April 13, 2020, Plaintiff obtained and reviewed a copy of her Equifax, Experian and Trans Union credit reports. She was shocked to see that she had numerous credit inquiries from companies from which she had not sought credit for any reason. She was also shocked to see that she had credit inquiries from both Santander and AutoExpo months after she had already been approved for financing through them.

128.   Plaintiff had not contacted any of the Defendants that submitted applications on her behalf after January 31, 2020, much less given her permission to obtain her credit reports to secure any type of financing on her behalf after the January 31, 2020 transaction was completed.

129.   On information and belief, Equifax did not have a lawful or reasonable basis to believe, let alone know, that Auto Expo had a permissible purpose to obtain and use Plaintiff's consumer report. On information and belief, Experian did not have a lawful or reasonable basis to believe, let alone know, that Auto Expo, 700Credit, Capital One, and Sandander had a permissible purpose to obtain and use Plaintiff's consumer report.

17

130.    On information and belief, Trans Union did not have a lawful or reasonable basis to believe, let alone know, that Auto Expo, Capital One, and Exeter had a permissible purpose to obtain and use Plaintiff's consumer report.

131.    On or about March 11, 2020, Equifax provided and published the Plaintiff's consumer report to Auto Expo without permissible purpose and without reasonable procedures to obtain verification that Auto Expo had a permissible purpose to obtain the Plaintiff's consumer report.

132.    On or about March 11, 2020, Experian provided and published the Plaintiff's consumer report to Auto Expo without permissible purpose and without reasonable procedures to obtain verification that Auto Expo had a permissible purpose to obtain the Plaintiff's consumer report.

133.    On or about March 11, 2020, Trans Union provided and published the Plaintiff's consumer report to Auto Expo without permissible purpose and without reasonable procedures to obtain verification that Auto Expo had a permissible purpose to obtain the Plaintiff's consumer report.

134.    On or about March 11, 2020, Experian provided and published the Plaintiff's consumer report to 700Credit without permissible purpose and without reasonable procedures to obtain verification that 700Credit had a permissible purpose to obtain the Plaintiff's consumer report.

135.    On or about March 20, 2020, Experian provided and published the Plaintiff's consumer report to Capital One without permissible purpose and without

18

reasonable procedures to obtain verification that Capital One had a permissible purpose to obtain the Plaintiff's consumer report.

136.   On or about March 20, 2020, Trans Union provided and published the Plaintiff's consumer report to Capital One without permissible purpose and without reasonable procedures to obtain verification that Capital One had a permissible purpose to obtain the Plaintiff's consumer report.

137.   On or about March 30, 2020, Experian provided and published the Plaintiff's consumer report to Exeter without permissible purpose and without reasonable procedures to obtain verification that Exeter had a permissible purpose to obtain the Plaintiff's consumer report.

138.   On or about March 30, 2020, Trans Union provided and published the Plaintiff's consumer report to Exeter without permissible purpose and without reasonable procedures to obtain verification that Exeter had a permissible purpose to obtain the Plaintiff's consumer report.

139.   On or about March 30, 2020, Experian provided and published the Plaintiff's consumer report to Santander without permissible purpose and without reasonable procedures to obtain verification that Sandander had a permissible purpose to obtain the Plaintiff's consumer report.

140.   On or about April 7, 2020, Experian provided and published the Plaintiff's consumer report to Capital One without permissible purpose and without reasonable procedures to obtain verification that Capital One had a permissible purpose to obtain the Plaintiff's consumer report.

19

141.    On or about April 7, 2020, Trans Union provided and published the Plaintiff's consumer report to Capital One without permissible purpose and without reasonable procedures to obtain verification that Capital One had a permissible purpose to obtain the Plaintiff's consumer report.

142.    Defendants sell cars and provide financing to consumers at large.

143.    AutoExpo and/or Yonkers Kia assigned their interest in the RISC to Santander.

144.    On information and belief, Santander accepted the assignment of the loan documents from AutoExpo and/or Yonkers Kia.

145.    On or about May 11, 2020, AutoExpo caused the vehicle to be seized from Plaintiff.

146.    Elyahou gave agents of AutoExpo the instruction to seize the vehicle from Plaintiff.

147.    AutoExpo sent Plaintiff an apparently backdated notice dated May 12, 2020, but which she did not receive until on or about May 26, 2020, advising Plaintiff that the vehicle was purportedly repossessed by AutoExpo, and advising her of the amount required to redeem the vehicle. A copy of the Notice is attached hereto as Exhibit 5.

148.    Also, AutoExpo sent Plaintiff an apparently backdated notice dated May 12, 2020, but which she did not receive until on or about May 26, 2020,

advising Plaintiff that the vehicle had been charged off and claiming a deficiency balance of $34,199.99. A copy of the Notice is attached hereto as <u>Exhibit 6</u>.

149.    On information and belief, at the time AutoExpo seized the vehicle, it lacked any present right to possession of the vehicle.

150.    On information and belief, at the time AutoExpo seized the vehicle, it did not have a security interest in the vehicle.

151.    As of May 12, 2020, AutoExpo had taken the vehicle for its own use and disposed of the vehicle for $0.00.

152.    Prior to taking the vehicle for its own use, AutoExpo did not send Plaintiff a notice of her right to redeem the vehicle, or of its intent to sell the vehicle, as required by NY UCC §§ 9-611, 9-614, and 9-623, and NY Personal Property Law § 316.

153.    Under the contract, the UCC, and the "FTC abolition of the holder-in-due-course rule" that was a part of the loan contract, Santander financed the transaction subject to all claims and defenses that Plaintiff had related to the underlying transaction, and was liable for all of the plaintiff's claims against AutoExpo and Yonkers Kia, up to the amounts paid and owed in the transaction.

154.    Plaintiff is not the only victim of AutoExpo and Yonkers Kia's fraudulent-and-deceptive conduct.

## Count I

## Truth in Lending Act Violations by Yonkers Kia, AutoExpo and Santander

155.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs with the same force and effect as though fully set forth herein.

156.    Yonkers Kia is a creditor as defined by TILA, 15 U.S.C. § 1601, *et seq.*

157.    AutoExpo is a creditor as defined by TILA, 15 U.S.C. § 1601, *et seq.*

158.    Plaintiff is a consumer as defined by TILA, 15 U.S.C. § 1601, *et seq.*

159.    Yonkers Kia and AutoExpo failed to provide the disclosures required under TILA, 15 U.S.C. § 1601, *et seq.*

160.    Yonkers Kia and AutoExpo violated TILA in one or more of the following ways, by example only, and without limitation:

      a.    By failing to accurately state the legal obligation between the parties at the time of disclosure;

      b.    By failing to accurately provide the finance charge, the total of payments, the total sales price, or the timing, of payments;

      c.    By failing to accurately reflect the down payment and credits, including the non-existence of the trade in vehicle; and

      d.    By inaccurately stating the APR and the total finance charge.

161.    As a result of the above, Yonkers Kia and AutoExpo have not provided accurate and complete disclosures as required by the Truth in Lending Act.

162.    In connection with the financing referenced above, Yonkers Kia and AutoExpo failed to provide a copy of the finance terms prior to the consummation of the sale or the loan.

163.    As a result of the above, Yonkers Kia and AutoExpo have breached the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.*, and is liable to Plaintiff for actual and statutory damages pursuant to the Act.

164.    Santander is liable for Yonkers Kia's and AutoExpo's violations of TILA pursuant to the FTC Holder Rule and the terms of the contract.

## Count II

### Violations of 15 U.S.C. §1681B(A)
### by Equifax, Experian and Trans Union

165.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs with the same force and effect as though fully set forth herein.

166.    Defendant Equifax violated 15 U.S.C. §1681b on numerous occasions by providing the Plaintiff's consumer reports to Defendant Auto Expo without a permissible purpose to do so.

167.    Defendant Experian violated 15 U.S.C. §1681b on numerous occasions by providing the Plaintiff's consumer reports to Defendants Auto Expo, 700Credit, Capital One, and Sandander without a permissible purpose to do so.

168.   Defendant Trans Union violated 15 U.S.C. §1681b on numerous occasions by providing the Plaintiff's consumer reports to Defendants Auto Expo, Capital One, and Exeter without a permissible purpose to do so.

169.   As a result of Defendants Equifax, Experian and Trans Union's conduct, the Plaintiff suffered actual damages, including, without limitation, credit damage related to each impermissible pull, violation of privacy, and other emotional and mental distress.

170.   Equifax, Experian and Trans Union's violations were willful, rendering each of the Defendants individually liable for punitive damages in the amount to be determined by the Court pursuant to 15 U.S.C. §1681n.  In the alternative, Equifax, Experian and Trans Union were negligent, entitling the Plaintiff to recovery under 15 U.S.C. §1681o.

171.   Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Equifax, Experian and Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

## Count III

### Violations of 15 U.S.C. § 1681b(f)
### by AutoExpo, Capital One, Santander and Exeter

172.   Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs with the same force and effect as though fully set forth herein.

173.     Under § 1681b(f), a person, including a corporation, may not use or obtain a consumer report for unauthorized purposes.

174.     Defendants AutoExpo, Capital One, Santander and Exeter each violated 15 U.S.C. §1681b(f) by obtaining and using the Plaintiff's consumer reports without a permissible purpose to do so.

175.     Defendants AutoExpo, Capital One, Santander and Exeter each violated 15 U.S.C. §1681b(f) by failing to accurately and lawfully certify a permissible purpose to consumer reporting agencies.

176.     As a result of Defendants AutoExpo, Capital One, Santander and Exeter's conduct, Plaintiff suffered actual damages including, without limitation, credit damage related to each impermissible pull, violation of privacy, and other emotional and mental distress.

177.     Defendants AutoExpo, Capital One, Santander and Exeter knew or should have known that there was no permissible purpose to obtain Plaintiff's credit report.

178.     Santander and AutoExpo in particular knew that there was already an approved loan for the vehicle from the January 31, 2020 transaction, and that the credit pulls in March were without any permissible purpose.

179.     For its willful violation of the FCRA, Defendants AutoExpo, Capital One, Santander and Exeter are liable to Plaintiff for punitive damages in the amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the

alternative, Defendants AutoExpo, Capital One, Santander and Exeter were negligent, entitling the Plaintiff to recovery under 15 U.S.C. §1681o.

180.    Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney fees from Defendants AutoExpo, Capital One, Santander and Exeter in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

**Count IV**

**Violation of 15 U.S.C. §1681e(a) By Equifax, Experian and Trans Union**

181.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs with the same force and effect as though fully set forth herein.

182.    Equifax violated 15 U.S.C. §1681e(a) by providing the Plaintiff's consumer report to Defendant Auto Expo without reasonable procedures to assume the proper use of and lawful purpose for such reports.

183.    Experian violated 15 U.S.C. §1681e(a) by providing the Plaintiff's consumer report to v without reasonable procedures to assume the proper use of and lawful purpose for such reports.

184.    Trans Union violated 15 U.S.C. §1681e(a) by providing the Plaintiff's consumer report to Defendants Auto Expo, Capital One, and Exeter without reasonable procedures to assume the proper use of and lawful purpose for such reports.

26

185.   As a result of Defendants Equifax, Experian and Trans Union's conduct, the Plaintiff suffered actual damages, including, without limitation, credit damage related to each impermissible pull, violation of privacy, and other emotional and mental distress.

186.   Equifax, Experian and Trans Union's violations were willful, rendering each of the Defendants individually liable for punitive damages in the amount to be determined by the Court pursuant to 15 U.S.C. §1681n.  In the alternative, Equifax, Experian and Trans Union were negligent, entitling the Plaintiff to recovery under 15 U.S.C. §1681o.

187.   Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Equifax, Experian and Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

## Count V

### Violation of 15 U.S.C. §1681m
### by AutoExpo, Capital One, Santander, and Exeter

188.   Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs with the same force and effect as though fully set forth herein.

189.   Defendant AutoExpo did not provide financing on the terms represented and agreed upon with Plaintiff.

27

190.    Defendants AutoExpo, Capital One, Santander and Exeter did not provide financing or any denial of financing to Plaintiff after each of their March and April credit pulls

191.    Defendants AutoExpo's failure to extend credit in accordance with the agreed-upon terms was an "adverse action" within the meaning of the FCRA, 15 U.S.C. § 1681a(k).

192.    Defendants AutoExpo, Capital One, Santander and Exeter failure to extend credit after their March and April credit pulls was an "adverse action" within the meaning of the FCRA, 15 U.S.C. § 1681a(k).

193.    Defendants AutoExpo, Capital One, Santander and Exeter each failed to provide the notice of adverse action required by the FCRA, 5 U.S.C. § 1681m.

194.    Defendants AutoExpo, Capital One, Santander and Exeter each violated 15 U.S.C. §1681m(2) and (3) by failing to provide the required notice information to the Plaintiff.

195.    As a result of Defendants AutoExpo, Capital One, Santander and Exeter's conduct, the Plaintiff suffered actual damages, including, without limitation, credit damage, violation of privacy, and other emotional and mental distress.

196.    Defendants AutoExpo, Capital One, Santander and Exeter's actions were willful, rendering each of the Defendants individually liable for punitive

28

damages in the amount to be determined by the court pursuant to 15 U.S.C. §1681n.

197.    In the event that the FCRA violation is determined to be negligent rather than willful, Defendants AutoExpo, Capital One, Santander and Exeter are liable to Plaintiff for her actual damages and reasonable attorney fees under 15 U.S.C. § 1681o.

198.    Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney fees from Defendants AutoExpo, Capital One, Santander and Exeter in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

199.    Santander is liable for AutoExpo's violations of FCRA pursuant to the FTC Holder Rule and the terms of the contract.

## Count VI

### Violation of 15 U.S.C. § 1691(d)(2)
### by AutoExpo, Capital One, Santander, and Exeter

200.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs with the same force and effect as though fully set forth herein.

201.    Defendants AutoExpo failure to extend credit in accordance with the agreed upon terms was an "adverse action" within the meaning of ECOA, 15 U.S.C. § 1691(d).

202.    Defendants AutoExpo, Capital One, Santander and Exeter's failure to extend credit after their March and April credit pulls was an "adverse action" within the meaning of ECOA, 15 U.S.C. § 1691(d).   Defendants AutoExpo, Capital One, Santander and Exeter failed to provide the notice of adverse action required by ECOA, 15 U.S.C. § 1691(d)(2).

203.    For its violations of ECOA, Defendants AutoExpo, Capital One, Santander and Exeter are liable to Plaintiff for actual damages, punitive damages of up to $10,000, and reasonable attorney fees under 15 U.S.C. § 1691e.

204.    Santander is liable for AutoExpo's violations of ECOA pursuant to the FTC Holder Rule and the terms of the contract.

## Count VII

### Common Law Fraud Violations
### against AutoExpo, Yonkers Kia, and Santander

205.    Plaintiff restates, realleges, and incorporates by reference all foregoing paragraphs as if set forth fully in this Cause of Action.

206.    AutoExpo's agents intentionally, recklessly and/or negligently made misrepresentations to Plaintiff regarding the price of the car, and the amount Plaintiff would be financing to purchase the car.

207.    AutoExpo then, without Plaintiff's knowledge, created loan documents containing different terms from those agreed upon.

208.   Without AutoExpo's false representations, Plaintiff would not have purchased the vehicle.

209.   Plaintiff has been actually damaged by AutoExpo's false representations by being stuck with a loan that she did not agree to.

210.   Plaintiff relied on the AutoExpo's misrepresentations and was induced to purchase the aforementioned automobile.

211.   The Defendants' actions as hereinbefore described were reckless, outrageous, willful, and wanton, thereby justifying the imposition of exemplary, treble and/or punitive damages.

212.   Santander is liable for AutoExpo's violations of state law pursuant to the FTC Holder Rule and the terms of the contract.

## Count VIII

### Conversion
### As to AutoExpo and Santander

213.   Plaintiff restates, realleges, and incorporates by reference all foregoing paragraphs as if set forth fully in this Cause of Action.

214.   At the time AutoExpo took possession of the vehicle from Plaintiff, they lacked any right of possession to the vehicle.

215.   AutoExpo's taking of the vehicle was a conversion of Plaintiff's property interest.

216.   AutoExpo  knew they lacked any right or authority to take the vehicle.

217.    Plaintiff had personal property in the vehicle at the time AutoExpo took it.

218.    Despite repeated demands, AutoExpo did not return Plaintiff's personal property to her for three weeks, resulting in significant inconvenience, stress, and aggravation.

219.    AutoExpo still has not returned the vehicle it wrongfully seized.

220.    Plaintiff has been damaged by AutoExpo's conversion of her property.

221.    AutoExpo's actions described herein were taken with wanton, willful, intentional and reckless disregard for Plaintiff's rights.

222.    Santander is liable for AutoExpo's violations of state law pursuant to the FTC Holder Rule and the terms of the contract.


## COUNT IX

### New York Uniform Commercial Code
### by AutoExpo and Santander

223.    Plaintiff restates, realleges, and incorporates by reference all foregoing paragraphs as if set forth fully in this Cause of Action.

224.    AutoExpo seized the vehicle under a claim that Plaintiff was in default of the RISC.

225.    AutoExpo  thus had an obligation to dispose of the vehicle in a commercially reasonable manner, pursuant to NY UCC § 9-610.

226.    AutoExpo also had an obligation to notify Plaintiff, at least 10 days before attempting to resell the vehicle, of his right to redeem the property and other information as set forth in NY UCC §§ 9-611-614.

227.    AutoExpo did not send Plaintiff the required notices 10 days before attempting to resell the vehicle.

228.    As a result of their failure to provide the required statutory notices, AutoExpo is obligated to Plaintiff for 10% of the purchase price fo the vehicle plus all finance charges on the RISC, pursuant to NY UCC § 9-625.

229.    Santander is liable for AutoExpo's violations of state law pursuant to the FTC Holder Rule and the terms of the contract.

## Count X

## Declaratory Relief against AutoExpo, Yonkers Kia, and Santander

230.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs with the same force and effect as though fully set forth herein.

231.    Plaintiff is entitled to a court order declaring that the fraudulent loan agreement between Plaintiff, AutoExpo, Yonkers Kia and Santander is null and void, requiring AutoExpo, Yonkers Kia and Santander to release Plaintiff from any obligations under that agreement and to stop any negative reporting to credit agencies regarding the loan.

## Count XI

### Violations of New York General Business Law § 349
### by AutoExpo, Yonkers Kia and Santander

232.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs with the same force and effect as though fully set forth herein.

233.    Under New York General Business Law ("GBL") § 349, deceptive acts or practices in the conduct of any business conducted in the State of New York are unlawful.

234.    AutoExpo and Yonkers Kia's actions in inducing a consumer to purchase a car and then preparing forged loan documents and forging that consumer's signature to it, violated GBL § 349 by falsely and deceptively forcing loans on consumers without consent.

235.    AutoExpo and Yonkers Kia have caused Plaintiff to suffer actual economic injury in the form of a loan to which she did not agree and which continues to affect her credit.

236.    By and through their acts, omissions, concealments, and misrepresentations, Defendants violated GBL § 349 with materially misleading and consumer-oriented deceptive acts and practices, with a broad impact on consumers at large, and have done so knowingly or willfully.

237.    As a direct and proximate result of AutoExpo and Yonkers Kia's deceptive acts and practices, committed in violation of GBL §349, Plaintiff was also

damaged in that she, among other things, suffered fear, stress, anxiety and difficulty sleeping, and suffered monetary damages as set forth above.

238.   Plaintiff claims all damages to which she is entitled arising from Defendants' violations of GBL § 349.

239.   Santander is liable for AutoExpo and Yonkers Kia's violations of GBL § 349 pursuant to the FTC Holder Rule and the terms of the contract.

### Prayer for Relief

**WHEREFORE**, plaintiff respectfully requests that this Court enter a Judgment:

1.   Declaring that Defendants' conduct complained of herein violates Plaintiff's rights under the TILA, FCRA, EOCA, and state law;

2.   Declaring that the loan agreement and any contract to purchase the car at issue are null and void;

3.   Enjoining Defendants from reporting to credit agencies that Plaintiff failed to honor the terms of any loan agreement;

4.   Directing Defendants to pay Plaintiff actual damages in an amount to be determined by a jury;

5.   Directing Defendants to pay Plaintiff statutory damages as provided under the TILA, 15 U.S.C. § 1640, and FCRA, 15 U.S.C. § 1681, *et seq.*;

6.   Directing Defendants to pay Plaintiff civil penalties as provided under New York General Business Law § 349;

7.     Directing Defendants to pay Plaintiff punitive damages in an amount to be

determined by a jury;

8.     Awarding Plaintiff reasonable attorney fees, costs and disbursements of this

action;

9.     Granting such other and further relief as this Court deems just and proper.

## Jury Demand

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff

demands a trial by jury in this action.

Dated:          New York, New York
                July 1, 2020

                                          Respectfully submitted,
                                          Bromberg Law Office, P.C.

                                          By: /s/ *Brian L. Bromberg*
                                                  Brian L. Bromberg
                                                  One of Plaintiff's Attorneys

Attorneys for Plaintiff

Brian L. Bromberg
Joshua Tarrant-Windt
Bromberg Law Office, P.C.
26 Broadway, 27th Floor
New York, New York 10004
Tel: (212) 248-7906

Thomas R. Breeden*
Thomas R. Breeden, P.C.
10326 Lomond Drive
Manassas, Virginia 20109
Tel: (703) 361-9277

* Mr. Breeden will file a request for admission *pro hac vice*.

36