

Attorneys at Law

Paul H. Aloe
Direct Phone: (212) 868-1888
Direct Fax: (212) 504-8317
paloe@kudmanlaw.com

October 8, 2020

**VIA ECF AND EMAIL**
Honorable Cathy Seibel
United States District Court
Southern District of New York
300 Quarropas Street, Courtroom 621
White Plains, New York 10601

    Re:   *McClain v. AutoExpo Ent. Inc. et al.* Case No. 7:20-cv-05054-CS

Dear Judge Seibel:

    We represent defendant Respect Auto Group I LLC d/b/a Yonkers Kia ("Yonkers Kia") and write pursuant to the Court's Individual Practice 2(A) to request a pre-motion conference with respect to a proposed motion under FRCP 12(b)(6) and 9(b) to dismiss the complaint (ECF No. 1) against Yonkers Kia.

    Of the eleven causes of the complaint, Yonkers Kia is only named in four: Count I (Truth in Lending Act ["TILA"], 15 U.S.C. § 1601, *et seq.*), Count VII (common law fraud), Count X (declaratory relief), and Count XI (NY GBL § 349). These counts, however, fail to state a plausible claim because Yonkers Kia is not alleged to have interacted with plaintiff in any way, and thus cannot be defendant on a fraud count, nor, based on those allegations, does it have a contract with plaintiff, and thus is not appropriately named on the TILA and declaratory relief counts.

    Plaintiff alleges that, in response to an advertisement placed by AutoExpo Ent. Inc. f/k/a Auto Expo Ent. Inc. ("AutoExpo"), she traveled to its Great Neck location at 46 Northern Boulevard, Great Neck, NY, and met with Max Colliman, an AutoExpo sales agent (Compl. ¶¶ 36–37). Mr. Colliman took a credit history from plaintiff, joined her on a call with Santander Bank, and then told her she was approved for a car loan (¶¶ 38–41). He then showed her a used Mercedes, which plaintiff agreed to purchase from AutoExpo for $26,595, with a $2,000 down payment (¶¶ 42–44). A different AutoExpo employee, Christina Casteluche, completed a retail installment contract (¶¶ 45–46). Plaintiff alleges that some of the terms were not filled in, and she did not leave the dealership with the contract (¶¶ 48, 53–55). She says that AutoExpo registered the Mercedes in New Jersey (¶ 61). Plaintiff alleges that she later learned that Santander did not have a credit line for her (¶¶ 64–65).

Honorable Cathy Seibel
October 8, 2020
Page 2

Plaintiff goes on to allege that AutoExpo "filled in the blanks" of the retail installment contract and listed the sales price as $36,271.39, plus $2,303.60 sales tax, less a $3,000 cash down payment and a $1,500 credit for a 2005 Honda Civic that she had not actually traded in (¶¶ 67–71). She also alleges that Yonkers Kia was listed as the seller of the vehicle, even though, according to the complaint, she purchased the vehicle from AutoExpo, not Yonkers Kia, and Yonkers Kia had no interest in the vehicle (¶¶ 74–77). She alleges that Yonkers Kia was listed as the seller in order to "utilize financing companies available to Yonkers Kia that were not available to AutoExpo" (¶ 77). She alleges that Yonkers Kia does not do business at 46 Northern Boulevard at all (¶¶ 81–83) and never had title to the vehicle (¶ 87). Yonkers Kia, in fact, never entered into any contract with plaintiff, and while the complaint annexes a retail installment contract as Exhibit 4 (ECF No. 1-4), it is not signed by Yonkers Kia. Nor does it bear the dealer number for Yonkers Kia, which would be the case if it were a contract with Yonkers Kia.

Plaintiff says that when she received the contract, she "contacted Eric Outcalt and Casteluche from AutoExpo asking for an explanation of the discrepancy" (¶ 88). She says that Mr. Outcalt promised her that he would correct the paperwork (¶ 89), but instead Ms. Casteluche "sent Plaintiff an email indicating that they were going to unwind the transaction and cancel it, and that they were going to pick up the vehicle" (¶ 90). Plaintiff says that she refused to unwind the transaction and that thereafter AutoExpo and other companies made numerous unauthorized credit pulls with various credit reporting agencies (named as defendants) and sullied her credit (¶¶ 93–127). Apparently, when the effort to obtain credit proved unsuccessful, AutoExpo caused the vehicle to be seized and repossessed (¶ 145). AutoExpo then sent her a notice with respect to the repossession (¶ 147; ECF No. 1-5).

Yonkers Kia is not alleged to have had any part in this. Plaintiff does not allege that she spoke or dealt with Yonkers Kia, nor that it had anything to do with the alleged unauthorized credit inquiries, nor that it had anything to do with the repossession of the vehicle. According to her complaint, the listing of Yonkers Kia on Exhibit 4 was a "discrepancy" that was supposed to have been corrected (¶¶ 88–89).

Counts I, VII, and XI are predicated on various theories of fraud, but plaintiff can allege no fraudulent communications made by Yonkers Kia. The common law fraud count fails against Yonkers Kia because there is no allegation that it made any representation, fraudulent or otherwise, to plaintiff. *See Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 186–87 (2d Cir. 2004) (quoting *Banque Arabe et Internationale D'Investissement v. Maryland Nat. Bank*, 57 F.3d 146, 153 (2d Cir. 1995)) ("To state a claim for fraudulent misrepresentation under New York law 'a plaintiff must show that (1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance.'"). Moreover, to the extent that the complaint alleges misrepresentations by AutoExpo, there is no allegation that Yonkers Kia knew of, assisted, or had anything to do with those misrepresentations.

Likewise, the GBL § 349 fails against Yonkers Kia. A GBL § 349 prima facie case requires a showing that a defendant engaged in a deceptive act having a "broader impact on consumers at large" and that the "defendant is engaging in an act or practice that is deceptive or misleading in a

material way and that plaintiff has been injured by reason thereof." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (1995); *see also Maurizio v. Goldsmith,* 230 F.3d 518, 521 (2d Cir. 2000) ("To make out a prima facie case under Section 349, a plaintiff must demonstrate that (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result."). There are no factual allegations that Yonkers Kia engaged in any deceptive act aimed at commerce, that was materially misleading, and caused her injury.

 Plaintiff alleges that "AutoExpo and Yonkers Kia's actions in inducing a consumer to purchase a car and then preparing forged loan documents and forging that consumer's signature to it, violated GBL § 349 by falsely and deceptively forcing loans on consumers without consent" (Compl. ¶ 234). But there is no allegation in the complaint from which it can plausibly be inferred that AutoExpo engaged in a practice against consumers generally, as opposed to a dispute with plaintiff herself. And there is no plausible allegation that Yonkers Kia had anything to do with the representations that AutoExpo made to plaintiff. Nor is there anything in the complaint that suggests that Yonkers Kia did anything deceptive. Even if it is true, as alleged in the complaint, that AutoExpo had a practice of using Yonkers Kia "to utilize financing companies available to Yonkers Kia that were not available to AutoExpo" (¶ 77), the complaint does not allege how this is a deception that caused her injury, let alone had a broader impact on consumers at large.

 Plaintiff's TILA claim fares no better. The complaint is careful not to allege that plaintiff actually entered into a contract with Yonkers Kia. The instrument annexed to the complaint, on its face, was not signed by Yonkers Kia. Plaintiff herself alleges that AutoExpo, not Yonkers Kia, "unwound the deal" and repossessed the vehicle (Compl. ¶¶ 90, 145). TILA liability requires a valid contract between the consumer and the creditor. *See Islam v. Lee's Motors, Inc.*, No. 17-CV-03955-DLI-VMS, 2018 WL 4771884, at *3 (E.D.N.Y. Sept. 30, 2018); *Orlosky v. Empire Sec. Sys., Inc.*, 230 A.D.2d 401, 403, 657 N.Y.S.2d 840, 842 (3d Dep't 1997) ("Significantly, a valid contract is a prerequisite to invocation of TILA protections"). Plaintiff herself identifies the listing of Yonkers Kia on Exhibit 4 as a "discrepancy."

 This leaves only the declaratory judgment count, in which plaintiff asks that the loan agreement be declared "null and void" and for "AutoExpo, Yonkers Kia and Santander to release Plaintiff from any obligations under that agreement and to stop any negative reporting to credit agencies regarding the loan" (Compl. ¶ 231). But since there is no allegation that Yonkers Kia is a party to any loan agreement, nor that it has or threatened to make any credit report concerning the loan, Yonkers Kia is not an appropriate party to the declaratory judgment count either.

 For these reasons, we believe that the complaint should be dismissed against Yonkers Kia. We therefore request a pre-motion conference to discuss making an appropriate motion to dismiss.

         Respectfully submitted,

         Paul H. Aloe

cc: All Counsel of Record (via ECF only)